(No. 11996.—Reversed and remanded.)

ADALINE L. BENNER *et al.* Appellants, *vs.* CHARLES HARPER DOVE *et al.* Appellees.

*Opinion filed April 17, 1918.*

DEEDS—*when a decree setting aside deed will not be sustained.* A decree setting aside, at the suit of one claiming as devisee under the grantor's will, a quit-claim deed given in consideration of services rendered by the grantee will not be sustained, where the deed was executed only eight days after the will was made and there is no proof of any subsequent change in the mental capacity of the grantor nor of undue influence or fraud by the grantee; and the court cannot substitute compensation for said services on the basis of a *quantum meruit,* as the grantor has a right to put his own value on them.

APPEAL from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

Covey & Woods, for appellants.

Harold F. Trapp, and James E. Miller, for appellees.

Mr. Justice Cartwright delivered the opinion of the court:

The appellants are Adaline L. Benner and Cass Benner, her husband. This suit was begun in the circuit court of Logan county by Adaline L. Benner, who filed her bill against the heirs-at-law of Henry B. Dove, deceased, the devisee and the executor of his will, to reform a quit-claim deed of a remainder in lands after a life estate reserved to himself, executed by Henry B. Dove in his lifetime. Appellee Charles Harper Dove answered the bill, denying the validity of the deed and claiming ownership of all the real estate described therein as devisee under the will of Henry B. Dove. He also filed his cross-bill to set aside the deed on account of mental incapacity and alleged confidential relations, fraud and undue influence. The cross-bill was answered by the appellants by asserting the validity of the deed and denying mental incapacity, a confidential relation or undue influence. Ahab Dove, one of the heirs-at-law of Henry B. Dove, answered the bill, denying the validity of the quit-claim deed, and filed a cross-bill alleging its invalidity on the same grounds alleged by Charles Harper Dove, and also the invalidity of the will under which Charles Harper Dove claimed, and further stating that he was able, ready and willing, and intended, to file a bill in equity to set aside the will. The cross-bill of Ahab Dove was answered by the appellants with similar denials and averments as were contained in the answer to the cross-bill of Charles Harper Dove, but as he would have had no right unless the will should first be set aside, his cross-bill requires no further attention. Other defendants to the original bill as heirs-at-law of Henry B. Dove were defaulted, and the cause was referred to the master in chancery to take the

evidence and report the same, together with his conclusions. The master took the evidence and reported the same, with his conclusions that the original bill should be dismissed for want of equity and relief should be granted under the cross-bill of Charles Harper Dove. The cause was heard on exceptions to the report, which were overruled and the report confirmed. A decree was entered accordingly, and the appellant Adaline Benner was charged with rentals of the real estate after the death of Henry B. Dove amounting to $1246, against which the court allowed a credit of $500 on a *quantum meruit* for services rendered, which constituted the consideration of the deed, and decreed that she pay $746, the difference between the rentals and the allowance. From that decree this appeal was prosecuted.

From a reading of the record we are unable to find any substantial basis in the evidence for the decree. There was no practical controversy as to the facts, which are as follows: Henry B. Dove was a veteran of the civil war, who had never married and lived in the village of Broadwell from the termination of the war until his death. He owned a tract of land of twenty-eight acres and several pieces of real estate, on one of which there was a dwelling house. He had been a carpenter and built a room detached from the dwelling, which he occupied and called McKinley Hall. The house was occupied by different families, with whom he boarded for the rent. In 1910 the appellants, Adaline L. Benner and Cass Benner, her husband, moved into the house, which they were to occupy for the board and lodging of Dove, and they leased the tract of land from him. During the year 1911 Dove sent for his friend and comrade, Capt. A. D. Cadwallader, an attorney of Lincoln, Illinois, and executed a will, giving all his property of every kind and character to the appellant Adaline L. Benner, provided she should always reside in the dwelling house and pay a certain amount of money each year to a church in Broadwell of which he was a member. Dove had physical trou-

bles and was ill several times and required personal atten-
tion, which was given him by the appellants. On January
28, 1915, he wrote to his nephew, Nason Dove, who lived
in Virginia, asking whether the appellee Charles Harper
Dove, a son of that nephew, would come out and stay with
him and take care of him, and offering to give him $10,000
worth of property at his death if he would do so. On Feb-
ruary 5, 1915, he again sent for Cadwallader, who had been
his attorney and had acted for him in all business matters
for many years, and told him that he wanted to make an-
other will and destroy the one which he had made giving
all his property to Adaline L. Benner. Cadwallader asked
him what his idea was in having it that way, and Dove said
someone had told him the Benners were getting ready to
move out and leave him alone and he was not going to
stand for it. He then made the will under which the ap-
pellee Charles Harper Dove claims, giving him all his prop-
erty and appointing Cadwallader executor of the will. On
February 9, 1915, Charles Harper Dove wrote a letter to
Henry B. Dove stating that his father had delivered the
letter to him and that he would come under certain condi-
tions, but it would mean a good deal to him to leave the
farm he then occupied and asking what he would be ex-
pected to do, whether he would live with Dove, and what
the property was which was valued at $10,000 which he
would get for his services. On February 13, 1915, Dove
again sent for Cadwallader and directed him to execute
a quit-claim deed of his real estate to Adaline L. Benner.
Cadwallader gathered up the deeds in his office belonging
to Dove of which he had possession and went to Broadwell
and from these deeds undertook to make a quit-claim deed
of all of Dove's real estate. Dove said that he wanted to
keep possession of the property as long as he lived; that
the Benners had been very kind to him and he wanted to
give the land to them. A quit-claim deed was then exe-
cuted, expressing as a consideration services rendered and

one dollar and reserving to the grantor a life estate. Adaline L. Benner was called into the room and the deed was delivered to her, with the statement that if she wanted to put it on record she could, but if she did not want to she did not have to. She asked Cadwallader to take the deed and keep it for her, and he did so and it was put on record after the death of the grantor. Dove did not know the description of his lands and Cadwallader gathered it from the deeds in his possession but by mistake omitted some of the property. Nothing further came of the proposition to Charles Harper Dove.

Henry B. Dove had kidney, bladder and bowel troubles, and when the deed was executed he was ill and in bed but there was no evidence of any want of mental capacity. On the contrary, he fully understood the transaction, gave directions what he wanted to do, and afterwards stated to different witnesses that he had left his property to Mrs. Benner, or "Doll," as he sometimes called her. He was eighty years old, but there was no evidence of any influence exerted upon him at any time by any person. His final illness commenced in January, 1915, and continued until his death, on June 28, 1915. The decree found that at the time of the execution of the deed Dove was in a condition of physical and mental collapse; that he was under the domination of the Benners and had no opportunity to advise or counsel with friends with reference to its execution. None of these things was proved. He had an opportunity to advise with his long-time friend and comrade whom he had selected as executor of the will executed eight days before. There was no evidence indicating the slightest change in his mental capacity in the eight days intervening between the making of the will under which Charles Harper Dove claimed and the execution of the deed. He was no more under the domination and control of the Benners at one time than at the other, and the evidence was that the will was made because he had been informed by somebody that

the Benners were going to leave him. He did not give all his property to the Benners but had $5000 personal assets, and that property passed under the will, which was admitted to probate. He had long before made a will giving all his property, real and personal, to Adaline L. Benner, subject only to the restriction that she should occupy the house and pay a certain sum annually to a church. There was no relation between him and the Benners recognized by the law as creating a duty requiring one party to act for the other and such that the person occupying such relation can take no advantage to himself. from any act relating to the interest of the other. Some of the physical troubles of Henry B. Dove were of a very disagreeable nature, such as required frequent changing of his clothes, and for. a considerable time he was very frequently lifted from his bed by Cass Benner, who waited on him and had a cot in the room, where he slept at night. He had constant attention and care, which were received to his entire satisfaction. The court found that the reasonable value of the services was $500, but Dove had a right to fix his own value on them, and if the transaction was free from any wrong on the part of the grantee the court could not substitute compensation on the basis of a *quantum meruit*. Dove left as his heirs-at-law one brother and nephews and nieces living in Virginia and Nebraska, with whom he was friendly but who had no claims upon him, and the will to Charles Harper Dove was made with a view to having him come and render services which it was believed would be necessary in case the Benners should leave. As we find no evidence to sustain the decree it must be set aside.

The decree is reversed and the cause is remanded to the circuit court, with directions to dismiss the cross-bills and grant the relief prayed for in the original bill.

*Reversed and remanded, with directions.*