(No. 32063.—
CHARLES M. BROWN, Appellee, *vs.* ALICE M. WHITE, Appellant.

*Opinion filed November 27, 1951.*

MAXWELL, J., took no part.

Louis Beasley, of East St. Louis, for appellant.

R. V. Gustin, of East St. Louis, for appellee.

Mr. Justice Crampton delivered the opinion of the court:

Charles M. Brown, a widower 74 years of age, brought this suit in the circuit court of St. Clair County, to set aside deeds whereby he conveyed his residence premises to defendant, Alice M. White, and himself as joint tenants. He also prayed for an accounting of funds alleged to have been transferred to defendant for use in defraying his household expenses. The complaint alleged an oral agreement under which defendant was to move into plaintiff's home, do the housework and care for him during his lifetime, in return for which she was to receive his property upon his death. It was also alleged that defendant subsequently violated the agreement, left plaintiff's home and refused to perform any further work. Other allegations set forth that at the time of the execution of the deed plaintiff's mental condition was such as to render him unable to realize the consequences of the transaction, and that defendant unduly influenced him in the transaction. Defendant answered, denying the material allegations of the complaint, and also filed a counterclaim for partition of the premises in question. The cause was referred to a master in chancery who, after hearing the evidence, recommended that plaintiff be required to pay to defendant $2000 for services rendered, and that upon payment of such sum the latter be required to reconvey the premises. The court affirmed the finding that defendant had accounted to the plaintiff for all moneys given to her; that the agreement had been entered into; and that defendant had not complied with the agreement. Certain exceptions to the report,

taken by the plaintiff, were sustained and a decree was entered setting aside the deeds. This appeal by defendant followed.

The evidence discloses that plaintiff's wife died in October, 1946. For about nine months prior thereto she had been ill, and defendant had worked at the house cooking the meals and taking care of her. Defendant was not paid a fixed wage, but received amounts varying from $15 to $18 each week. After the death of plaintiff's wife, defendant and her husband moved into plaintiff's home, and resided there with him. She prepared the meals, and performed other housekeeping duties. Plaintiff had his bank account changed into a joint account with defendant, and the latter used his funds to purchase groceries and pay other household expenses. Disputes and differences later arose in the household, principally between plaintiff and defendant's husband, and on August 15, 1947, about ten months after defendant had moved into plaintiff's home, she and her husband left, at plaintiff's request. At that time plaintiff accused defendant of embezzling his money, and had her arrested. He subsequently caused the charges to be withdrawn, however, and there was no prosecution. According to defendant's testimony the principal reason why she left plaintiff's home was his failure to get along with her husband.

W. G. Teckenbrock, a veterinarian, testified that he had known both parties for about twenty years; that after plaintiff's wife died he visited plaintiff's house at the request of defendant; that during that visit a conversation occurred in which defendant remarked that something had to be done or she could not remain there. She further stated, "I can't afford to leave my home without having something definite prepared, on paper, to secure me for taking care of Mr. Brown; we don't know how long he is going to live and he may be a considerable problem before he dies." The witness further testified that plain-

tiff's mind was not clear and that he advised plaintiff not to sign any papers until his mental condition improved. The plaintiff testified to a conversation with defendant in which the latter agreed to stay with him and take care of him as long as he lived. She then requested him to go to the bank and sign some papers. Other evidence was introduced showing that in November, 1946, defendant accompanied the plaintiff to a bank where he discussed the matter of a will with an attorney; that he then executed a will making defendant the beneficiary; and that on March 18, 1947, he went to the bank with defendant and executed the deed placing title to his property in joint tenancy with her. Both the attorney who drew the will and the bank employee who prepared the deed testified plaintiff was rational and knew what he was doing.

Defendant maintains the evidence does not support the finding that the deed was executed pursuant to an agreement as alleged by plaintiff. We cannot agree with this contention. The evidence of conversations in which such an arrangement was discussed, the direct testimony of the plaintiff as to an oral agreement having been made, the circumstances of the parties, and natural inference to be drawn from the fact that defendant moved to plaintiff's home and undertook the duties described, amply warrant the conclusion that the agreement was entered into as alleged. It is clear the conveyance was made pursuant to its terms and in contemplation of defendant remaining in the home and taking care of the plaintiff.

It is not so clear, however, as to the cause of defendant's leaving the premises and discontinuing the duties contemplated by the arrangement. The evidence is very meager on the question who was at fault in this respect and who violated the terms of the agreement. Neither of the briefs devotes much attention to the question, nor provides any assistance in determining the sufficiency of the evidence in this respect. We think, however, that upon the record

the chancellor was warranted in finding that defendant had not complied with the agreement, and in setting aside the deeds accordingly. Examination of the testimony of plaintiff discloses that he possessed a very poor memory; that he was easily led to make admissions against his interest which, in the light of other undisputed evidence, were obviously without any basis in fact; and that, while he might have been competent to conduct the ordinary affairs of his life, he was handicapped to some extent by senility. On the other hand, the testimony of defendant, who could be expected to have a clear recollection of the circumstances and events, fails to establish that plaintiff prevented her from fulfilling her part of the agreement. Indeed, it shows affirmatively that she abandoned her work, if not on her own initiative at least without any protest or offer to continue it.

The law is clear that where one voluntarily conveys his property in consideration of support and maintenance during his life, and the grantee afterwards refuses or neglects to perform the contract, equity will grant relief by setting aside the deed and revesting the grantor with title. The court will infer, from the grantee's refusal to perform, a fraudulent intent in the first instance in entering into the agreement. Within the principle of that rule, it is also established that where the agreement shows the grantor and grantee are to jointly share the occupancy of the premises conveyed, and it becomes apparent they can no longer do so, a court of equity will set aside the conveyance. *Corzine* v. *Keith,* 384 Ill. 435.

The situation in *Benner* v. *Dove,* 283 Ill. 318, upon which defendant relies, is clearly distinguishable from the present one. In that case Adaline Benner and her husband moved into Dove's home, which they were to occupy for his board and lodging. They also leased a tract of land from him. They provided him with constant attention and

care during his illness and physical troubles, from which he finally died. Prior to his death he conveyed the property to the Benners, reserving a life estate to himself. After his death his heirs sought to set aside the deed on grounds of mental incapacity, confidential relationship and undue influence. A decree setting aside the deed was reversed by this court on the ground that it was without any substantial basis in the evidence. Contrary to the facts in the case at bar, the services in the *Benner case* were fully performed, to the complete satisfaction of the grantor. The latter made no complaint against his grantees, and it was not until after his death, when the Benners had completely performed their undertaking, that any attempt was made to set aside the conveyance. It is evident that this case has no application to the controlling issue in the case at bar.

Defendant argues that the conveyance was not made pursuant to any agreement or for any consideration other than a desire to provide for her. She cites and discusses authorities for the proposition that voluntary conveyances, made without valuable consideration, are binding and effective; that an owner may sell his property for very little, or give it away for nothing if he so desires; and that the conveyance cannot afterward be set aside upon the ground of inadequacy or want of consideration. There is no question about the validity of the rules urged by defendant. But they have no application to the facts disclosed by the evidence in this record. While defendant testified that plaintiff's wife told him she wanted defendant to have the property, and that after his wife's death plaintiff told defendant he would deed everything to her, the preponderance of the evidence supports the conclusion that the deed was not intended as a gift but as a performance of his part of an arrangement under which he was to receive the care and housekeeping services of the defendant.

In view of our conclusion, it is unnecessary to discuss plaintiff's further contention that the deeds should be set aside for mental incapacity and undue influence. The decree of the circuit court of St. Clair County is correct and will be affirmed accordingly.        *Decree affirmed.*

Mr. Justice Maxwell took no part in the consideration or decision of this case.